UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLAT ROCK METAL, INC., *et al.*,

     Plaintiffs,

                                 Case No. 23-cv-11063

v.                              Hon. Matthew F. Leitman

ASSUREDPARTNERS OF
MICHIGAN, LLC, *et al.*,

     Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ASSURED PARTNERS OF MICHIGAN, LLC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 38)

In 2019, AssuredPartners of Michigan, LLC ("Assured") procured for Flat Rock Metal, Inc. and Bar Processing Corporation (collectively, "Flat Rock") a liability insurance policy (the "Policy") issued by Federal Insurance Company ("Federal"). According to Flat Rock, Assured promised to help Flat Rock notify Federal when and if third parties asserted claims against Flat Rock that were covered under the Policy. In this action, Flat Rock alleges that Assured breached this contractual obligation and that, as a result, Flat Rock lost out on coverage that should have been available under the Policy for a covered claim. (*See* Compl. at ¶¶ 42-43, ECF No. 1-1, PageID.21.) Flat Rock also brings a negligence claim against Assured.

Assured has filed a motion for summary judgment on both of Flat Rock's claims. (*See* Mot., ECF No. 38.) For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I

## A

Flat Rock is a Michigan steel processing company located in Flat Rock, Michigan. (*See id.* at ¶ 1, PageID.15.) Assured is an insurance agent licensed to do business in Michigan. (*See id.* at ¶ 8, PageID.16.) For many years, Flat Rock purchased insurance policies through Assured. (*See* Dep. of Jennifer Bellard at 125:22-127:6, ECF No. 41-1, PageID.1798-1799.)

Assured's relationship with Flat Rock was not limited to procuring insurance policies. In addition to procuring policies, Assured would assist Flat Rock in notifying Flat's Rock's insurance carriers when a covered claim was lodged against Flat Rock during the term of a policy that Assured had procured for Flat Rock. As Jennifer Bellard, Flat Rock's human resources manager, explained, when Flat Rock received notice of a covered "event," Flat Rock would "pick up the phone and call" Assured, and Assured "would then notify the carrier" who issued the policy about the event. (*Id.* at 126:15-24, PageID.1799.) Bellard said that this was the "custom and practice" of the parties throughout their "long-term relationship." (*Id.* at 126:11-127:2.)

Assured employee Cindy Curto, whom Assured designated as its corporate representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure, echoed Bellard's description of the parties' custom and practice.  Curto testified that under the parties' usual practice, Flat Rock would inform Assured when a claim had been made against Flat Rock, and Assured would then "submit" the claim to the carrier on Flat Rock's behalf:

> The insured would probably call . . . and say, "I have a claim." And then there would be instruction from . . . the claim representative possibly that would say, "Okay, send us the information," or we'll write it down and submit it. And we do.

(Dep. of Cindy Curto at 45:10-24, ECF No. 41-14, PageID.2230.)  She later added that when an insured "call[s] us and report[s a] claim, then we have a duty to give it to [the carrier]." (*Id.* at 90:6-10, PageID.2241.)

**B**

In April of 2019, Flat Rock engaged Assured to procure a commercial liability insurance policy from Federal. (*See* Compl. at ¶¶ 6-10, ECF No. 1-1, PageID.16-17.)  Assured then procured the Policy. (*See id.* at ¶ 10.)  The term of the Policy ran from April 22, 2019 through February 1, 2020 (the "Policy Period"). (*See* Policy, ECF No. 38-2, PageID.1008.)  The Policy provided "claims made" coverage, and it identified two types of covered claims: "Employment Claims" and "Third Party

3

Claims." (*See id.*, PageID.1046-1047.)  This case concerns an alleged Employment

Claim; the Policy provisions concerning Third Party Claims are not relevant.

"Employment Claim" is a defined term under the Policy.  As relevant here,

such a claim includes an:

> (e)     administrative, regulatory or tribunal proceeding commenced by:
>
> > (i)     the issuance of a notice of charge, formal investigative order or other similar document; or
> >
> > (ii)    in the event the Insured is not issued notice as set forth in (e)(i) above, the receipt by an Insured of the administrative, regulatory or tribunal proceeding resulting from such notice of charge, formal investigative order or other similar document,
>
> Including any such proceeding brought by or in association with the Equal Employment Opportunity Commission or any similar governmental agency located anywhere in the world with jurisdiction over the Organization's employment practices[.]

(*Id.*, PageID.1048.)

The Policy also has a notice provision that specifically applies to an

Employment Claim "that is brought as a formal administrative or regulatory

proceeding commenced by the filing of a notice of charges[.]" (*Id.* at § IV(B),

PageID.1055.)  When such a claim arises, the "Insured" (Flat Rock) must provide

"written notice" of the claim to Federal in order to exercise its right to coverage for

4

the claim. (*Id.*)  The written notice must include certain basic information about the

Employment Claim, including:

> [S]uch information, assistance and cooperation as the
> Company may reasonably require and shall include in any
> notice [of Claim, Employment Claim, or Potential Claim]
> a description of the Claim, request or Potential Claim, the
> nature of any alleged Wrongful Act, the nature of the
> alleged or potential damage, the names of all actual or
> potential claimants, the names of all actual or potential
> defendants, [and] the manner in which such Insured first
> became aware of the Claim, Potential Claim, or alleged
> Wrongful Act[.]

(the "Required Written Notice"). (*Id.* at § IV(D), PageID.1056.)  The Required

Written Notice must be provided within a limited time period: either "during the

Policy Period," or, if the Policy "is renewed," then not more than "365 days after the

end of the Policy Period." (*Id.* at § IV(B), PageID.1055; Endorsement/Rider No. 10,

ECF No. 38-5, PageID.1388.)

One last Policy provision concerning notice of an Employment Claim is

relevant to this action.  That provision states that notice of an Employment Claim by

an insured made to a licensed agent of Federal in the State of Michigan is deemed

notice to Federal "provided that such notice is given in accordance with the terms

and conditions" of the Policy's reporting provisions. (Endorsement/Rider No. 7,

ECF No. 38-5, PageID.1382.)  It is undisputed that Assured was a licensed agent for

Federal in Michigan. (*See* Coverage Denial, ECF No. 38-9, PageID.1716.)

## C

In "late May" 2019, Bellard received a call from the Michigan Department of Civil Rights (the "MDCR") notifying her that Flat Rock should "be expecting a notification in the mail for a claim of discrimination from Adel Aridi," one of Flat Rock's employees (the "Aridi Charge"). (Bellard Dep. at 34:9-35:4, ECF No. 41-1, PageID.1776.)   After receiving the call from the MDCR, Bellard emailed Jeff Ferguson, an Assured employee, to tell him about the call.  She wrote: "I received a phone call today, we have a complaint from the [MDCR] opened against us for the BPC Monroe facility, the complaint is being mailed to us today." (05/28/2019 Bellard Email, ECF No. 38-6, PageID.1520.)

The parties offer sharply differing accounts of what happened next.  Bellard says that she called Ferguson and orally provided him with additional information about the MDCR complaint. (Bellard Dep. at 40:19-42:18, PageID.1777-1778.)  She reports that during that call, she told Ferguson that "Adel Aridi was claiming . . . harassment and discrimination in the workplace," and she says that she gave Ferguson "the names of all the actual claimants and defendants[.]" (*Id.*)  Bellard also told Ferguson that Flat Rock was expecting to receive a written copy of the Aridi Charge "in the mail." (*Id.* at 40:20-25.)

Ferguson denies that the call described by Bellard ever occurred, and he insists that neither Bellard nor anyone else from Flat Rock ever provided any details about

the MDCR charge beyond those in Bellard's email.  In Ferguson's words: "Neither Jennifer Bellard nor any other Flat Rock representative provided me or AssuredPartners, either verbally or in writing, any additional information or details about the complaint concerning [Flat Rock's] BPC Monroe facility that Jennifer Bellard referenced in her May 28, 2019 email." (Ferguson Aff. at ¶ 9, ECF No. 38-2, PageID.992.)

But it is undisputed that on June 5, 2019, Bellard emailed Ferguson to ask for a list of attorneys Flat Rock could hire for "the employment issue." (06/05/2019 Bellard Email, ECF No. 38-6, PageID.1535.)  Ferguson responded the same day and forwarded a list of Federal-approved attorneys. (*See* 06/05/2019 Ferguson Email, ECF No. 38-6, PageID.1534.)  In the same email, Ferguson asked Bellard to send him a copy of the Aridi Charge "so that [Assured could] get it filed" with Federal. (*Id.*)  Ferguson also said: "Remember, we can file for 'Records Only' too."[1] (*Id.*)

Even though Ferguson told Bellard that Flat Rock and Assured could file a "Records Only" notice concerning the Aridi Charge with Federal, Ferguson now says that he was "unable" to do so because Bellard had not given him "any information" about the Aridi Charge. (Ferguson Aff. at ¶ 12, ECF 38-2, PageID.993.)  However, as noted above, Bellard insists that she gave Ferguson several details concerning the Aridi Charge.

---

[1] Ferguson never explained what he meant by a "Records Only" filing.

**D**

On June 17, 2019, Bellard emailed Ferguson and told him that Flat Rock would like to use the law firm of Clark Hill to handle the Aridi matter. (*See* Bellard Email, ECF No. 38-6, PageID.1534.)   That same day, Ferguson responded and reminded Bellard that Assured still "d[id] not have" a copy of the Aridi Charge. (06/17/2019 Ferguson Email, ECF No. 38-6, PageID.1534.)   He asked her to "forward" the Aridi Charge to him "so that [Assured] can notify [Federal] and [Clark Hill]." (*Id.*)   Bellard responded that she had not yet received the Aridi Charge. (*See* 06/17/2019 Bellard Email, ECF No. 38-6, PageID.1532.)

Also on June 17, 2019, Bellard received an email from Clark Hill attorney David Cessante informing Bellard that Clark Hill would be representing Flat Rock in connection with the Aridi Charge. (*See* 06/17/2019 Cessante Email, ECF No. 38-6, PageID.1504.)

**E**

Bellard finally received the Aridi Charge on July 18, 2019. (*See* Bellard Dep. at 42:23-24, ECF No. 41-1, PageID.1778; *see also* 07/19/2019 Bellard Email, ECF No. 38-6, PageID.1503.)   Bellard did not send the Aridi Charge to Assured. (*See* Bellard Dep. at 108:24-109:20, PageID.1794.)   She believed that she did not need to do so because, as described above, it had been the past practice between the parties that Assured would "notify" a carrier of a claim once Flat Rock provided oral notice

of the claim by phone – as she believed she had done. (*See id.* at 126:20-24, PageID.1799.)

Instead of sending the Aridi Charge to Assured or Federal, Bellard sent it to Cessante. (*See* 07/19/2019 Bellard Email, ECF No. 38-6, PageID.1503.)  Cessante thereafter prepared and sent Flat Rock's position statement and response to the MDCR. (*See* MDCR Response, ECF No. 41-2, PageID.1908-1917.)

**F**

On February 4, 2020, Flat Rock renewed the Policy and extended its coverage through February 1, 2021. (*See* Policy Renewal, ECF No. 38-8, PageID.1552.) Because Flat Rock renewed the Policy, the Required Written Notice with respect to the Aridi Charge was due not later than February 1, 2021 – 365 days after the expiration of the Policy Period.  (*See* Policy, ECF No. 38-2, PageID.998.)

Flat Rock did not send that Required Written Notice directly to Federal by that deadline.  Assured likewise did not send the Required Written Notice to Federal on Flat Rock's behalf by the deadline.

**G**

Aridi eventually filed an employment discrimination action against Flat Rock in a Michigan state court (the "Aridi Lawsuit"). (*See* Aridi Lawsuit, ECF No. 38-7.) On January 20, 2022 – 353 days after the expiration of the period to report an Employment Claim under the Policy – Bellard emailed to Assured a copy of the

9

Complaint in the Aridi Lawsuit along with a request that Assured "push" the matter "through" to Federal and "file an extension immediately." (01/20/2022 Bellard Email, ECF No. 41-7, PageID.2124.)  The next day, Bellard sent the Aridi Charge to Assured. (*See* 01/21/2022 Bellard Email, ECF No. 38-6, PageID.1503.)  Assured thereafter sent the Aridi Charge and the Complaint in the Aridi Lawsuit to Federal. (*See* Notice of Claim, ECF No. 38-6, PageID.1497; Aridi Complaint, ECF No. 38-7; Mot. for Summ. J., ECF No. 38, PageID.969.)

On February 14, 2022, Federal denied Flat Rock coverage for the Aridi Lawsuit on the basis that Assured had failed to timely provide the Required Written Notice:

> This Claim was first made on July 2, 2019 upon issuance of the Notice of Charge of Discrimination. The Company has reviewed correspondence between Flat Rock Metal, Inc. and AssuredPa[r]tners from May and June 2019 referring to a complaint from the dept. of civil rights and requesting a list of panel attorneys. Unfortunately, the correspondence does not include information sufficient to satisfy [the Required Written Notice provision] and the Company is unable to accept the correspondence with AssuredPartners as notice of a Claim to a licensed agent of the Company. Consequently, notice of this Claim was not provided to the Company until January 24, 2022, nearly two years after the expiration of the applicable Policy Period, and nearly one year after the end of the 365 day period following the expiration of the applicable Policy Period. Accordingly, as the condition precedent to coverage of notice to the Company during the Policy Period, or, in no event later than 365 days after the end of the Policy Period has not been met, we must deny coverage for this matter, in its entirety, under the

> [Employment Practices Liability Coverage] Part of the
> Policy.

(Coverage Denial, ECF No. 38-9, PageID.1716.)

After Federal denied coverage, Brent Everingham, an Assured employee who was then handling Flat Rock's account, wrote to Federal in an effort to persuade Federal to reconsider. (02/16/2022 Everingham Email, ECF No. 41-11, PageID.2213.) Everingham highlighted, among other things, that there had been communication between Flat Rock and Assured before the deadline for submitting the Required Written Notice:

> We understand the reasoning behind the denial given [Federal] is citing late reporting (over 365 days[)]; however, we do feel that there was communication between the insured and our Agency on the claim and it appears this communication was done in a timely manner. Now, I understand the position being taken is that the insured was not clear in the communication in stating a claimant[']s name and I also understand that there was no EEOC complaint provided to us (at least to my knowledge). I would also ask Chubb that we look at the client[']s past history when it comes to claim reporting and based on my experience and from what I can gather in our agency notes, they have complied with the reporting terms on all claims. Again, I am not sure what happened on this particular claim but based on what we have provided in terms of communication and the attached communication, we feel this should be enough to revisit the claim for the insured.

(*Id.*) Notwithstanding Everingham's efforts on Assured's behalf, Federal stood by its denial.

## H

Flat Rock ultimately settled with Aridi. (*See* 11/04/2024 Mot. Hr'g Tr., ECF No. 47, PageID.2353.)  The total amount of the settlement plus the legal fees that Flat Rock paid to Clark Hill is somewhere between $150,000.00 to $275,000.00 (*See id.*; *see also* Pl.'s Supp. Br., ECF No. 46, PageID.2309.)

## I

On April 5, 2023, Flat Rock filed a Complaint against Assured and Federal in the Wayne County Circuit Court. (*See* Compl., ECF No. 1-1, PageID.15.)  The Complaint asserted three claims. (*See id.*)

In the first claim, Flat Rock alleged that Federal breached the Policy by declining to defend and indemnify Flat Rock in connection with the Aridi Lawsuit. (*See id.* at ¶ 28, PageID.19.)

In the second claim, Flat Rock alleged that Assured breached an express or implied-in-fact contract under which Assured had agreed to "provide [Federal] with all information . . . it received from [Flat Rock] concerning" the Aridi Charge. (*Id.* at ¶ 39, PageID.21.)  According to Flat Rock, when Ferguson received Bellard's oral telephonic report about the Aridi Charge, Assured was obligated to "complete[] a claim form" concerning the Charge and to "submit[]" that form to Federal on Flat Rock's behalf. (Pl.'s Supp. Br., ECF No. 46, PageID.2310.)  Flat Rock says that

Assured's failure to do so caused Flat Rock to lose out on coverage for the Aridi Charge that was available under the Policy. (*See id.*)

Finally, in the third claim, Flat Rock alleged that Assured negligently breached its duty to report the Aridi Charge to Federal. (*Id.* at ¶ 34, PageID.19-20.)[2] Flat Rock says that the breach of that duty caused Flat Rock to miss out on coverage under the Policy. (*See id.* at ¶ 36.)

On May 5, 2023, Assured removed the action to this Court. (*See* Notice of Removal, ECF No. 1.) After the close of discovery, Federal and Assured both moved for summary judgment. (*See* Mots. for Summ. J., ECF Nos. 37, 38.)

Federal argued that it was entitled to summary judgment on Flat Rock's breach of contract claim because Flat Rock failed to timely provide the Required Written Notice of the Aridi Charge to Federal or to Assured and, therefore, Flat Rock was not entitled to a defense or indemnification under the Policy. (*See* Mot., ECF No. 37.) In making that argument, Federal emphasized that Bellard's emails to Assured did not contain the Required Written Notice. (*See id.*, PageID.690.) Federal added that while Bellard may have orally provided additional information in her phone calls with Ferguson, the calls were insufficient because the Policy "require[d]

---

[2] In the Complaint, Flat Rock identified additional duties that it said Assured breached. But in its response to Assured's motion for summary judgment, Flat Rock defended its negligence claim solely to the extent that the claim was based on Assured's alleged duty to report the Aridi Charge to Federal. (*See* Am. Resp., ECF No. 41, PageID.1759-60.)

*written* notice." (*Id.*, PageID.691; emphasis in original.)  At the hearing on Federal's motion, Flat Rock's counsel conceded that under controlling Michigan precedent,[3] Federal was entitled to judgment as a matter of law on the grounds advanced in its motion. (*See* 11/04/2024 Mot. Hr'g Tr., ECF No. 47, PageID.2318-2319.)  For that reason, and for the reasons stated in Federal's motion, the Court granted Federal's motion for summary judgment. (*See* Order, ECF No. 45.)

Assured argued that it was entitled to summary judgment on Flat Rock's breach of contract claim because its only contractual obligation was to send the Aridi Charge to Federal once it received the Aridi Charge from Flat Rock, and Assured contended that it fulfilled that obligation in January of 2022 when it first received the Aridi Charge from Bellard. (*See* Mot., ECF No. 38, PageID.985.)  Assured made another argument in an additional round of briefing requested by the Court.  It contended that even if, as Flat Rock alleged, it (Assured) was obligated to tell Federal about Bellard's May 2019 oral report to Ferguson, its alleged breach of that obligation did not injure Flat Rock because Federal would not have been obligated to defend and indemnify Flat Rock even if Assured had passed along Bellard's oral report. (*See* Def.'s Supp. Br., ECF No. 48, PageID.2400-2401.)  The Court is now ready to rule on Assured's motion.

---

[3] *See Defrain v. State Farm Mut. Auto Ins. Co.*, 817 N.W.2d 504 (Mich. 2012).

## II

Assured seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under that rule, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

## III

### A

The Court begins with Flat Rock's breach of contract claim. "Under Michigan law, the elements of a breach of contract claim are the following: (1) a contract existed between the parties, (2) the terms of the contract required performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F.Supp.2d 815, 818 (E.D. Mich. 2007).

In order to resolve Flat Rock's contract claim, the Court must interpret and apply two separate contracts: the Policy and the alleged implied-in-fact contract between Assured and Flat Rock. When interpreting the Policy, the Court must follow "the same contract construction principles that apply to any other species of contract." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). Those principles require the Court to "apply unambiguous contract provisions as written." *Id.*

As to Flat Rock's contract with Assured, Flat Rock contends that that contract was implied-in-fact. (*See* Resp., ECF No. 41, PageID.1757-1758.) Such a contract "arises between parties when those parties show a mutual intention to contract." *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 504 (6th Cir. 1995). And "the terms of [an implied] agreement will be determined by [the parties'] conduct or other pertinent circumstances surrounding the transaction." *Id.*

**B**

As noted above, Flat Rock alleges that Assured breached an implied-in-fact contract that required Assured to "provide [Federal] with all information . . . it received from [Flat Rock] concerning" the Aridi Charge. (Compl. at ¶ 39, ECF No. 1-1, PageID.21.) More specifically, Flat Rock contends that Assured breached the parties' contract when it (Assured) failed to give Federal written notice of the information about the Aridi Charge that Bellard orally reported to Ferguson during

their telephone conversation in May of 2019. (*See* Pl.'s Supp. Br., ECF No. 46, PageID.2309-2310.)

Assured contends that it is entitled to summary judgment on this claim because Flat Rock cannot show that (1) the terms of the contract are those alleged by Flat Rock or (2) Flat Rock suffered an injury as a result of Assured's alleged breach. For the reasons explained below, the Court disagrees.

**1**

Assured first argues that Flat Rock has the terms of the alleged contract wrong. According to Assured, any alleged agreement between itself and Flat Rock was necessarily "qualified by the terms of the Policy." (Mot., ECF No. 38, PageID.984.) And Assured insists that, as "qualified" by the Policy, the agreement between itself and Flat Rock could only have been "that if and when [Flat Rock] forwarded the *written* Aridi Charge, [Assured] would report the Employment Claim to [Federal]." (*Id.*, PageID.985; emphasis in original.)  In other words, Assured says that it had no obligation to report anything to Federal about the Aridi Charge unless and until it received the actual written charge from Flat Rock.

But there is evidence to the contrary in the record.  As noted above, Bellard testified that Assured would provide notice to Flat Rock's insurance carriers based only on a phone call from Flat Rock. (*See* Bellard Dep. at 126:11-24, ECF No. 41-1, PageID.1799.)  And Curto likewise testified on Assured's behalf that under the

parties' custom and practice, Flat Rock would at times call to orally report a claim, and Assured would then "write it down and submit it." (Curto Dep. at 45:18-24, ECF No. 41-14, PageID.2230.) Moreover, Curto's testimony is in tension with Assured's current contention that it had no obligation to tell Federal about the Aridi Charge until it received the actual charge from Flat Rock. Curto testified that Assured was obligated to report a claim on Flat Rock's behalf when Assured had been given "enough information" about the claim (*id.* at 90:7-12, PageID.2241), and she explained that Assured did not tell Federal about the Aridi Charge in 2019 "[b]ecause [Assured] never got all the *information* to file the official claim in 2019." (*Id.* at 103:7-12, PageID.2244; emphasis added.) Notably, Curto did not say, as Assured says now, that Assured was only obligated to notify Federal of a claim against Flat Rock if and when Assured received a copy of the Aridi Charge from Flat Rock.

Further, there is nothing in the Policy that says an Insured (or a representative of an Insured) must wait to notify Federal of an Employment Claim until it actually receives a written copy of the administrative order or notice underlying the claim. The language of the Policy actually indicates the opposite. Under the Policy, an Employment Claim arises when an administrative order or notice relating to a charge of discrimination is "issu[ed]" – not when it is received by an Insured. (Policy, ECF No. 38-2, PageID.1048.) Since the Policy plainly permits an Insured to report an Employment Claim that has come into existence, it follows that an Insured (or its

18

representative) may report such claim at any time after an administrative order or notice charging discrimination is issued – even if the Insured (or its representative) does not yet have a copy of the order or notice.

For all of these reasons, the Court concludes that there is, at a minimum, a factual dispute as to whether the parties' contract required Assured to report the Aridi Charge to Federal before Assured received a written copy of the charge.

## 2

Assured next argues that Flat Rock could not have suffered an injury as a result of Assured's failure to inform Federal about Bellard's oral report to Ferguson. Assured's argument proceeds in the following steps:

> Step 1: Federal's obligations under the Policy are triggered only if Flat Rock provides written timely notice of an Employment Claim.

> Step 2: Under the Policy, an Employment Claim does not come into existence unless and until an administrative agency has commenced proceedings by issuing a document such as a notice or order.

> Step 3: When Bellard made her oral report to Ferguson in May or June of 2019, no administrative agency had yet issued any notice or order commencing proceedings related to the Aridi Charge. (The Notice of Discrimination related to the Aridi Charge was issued on July 2, 2019.) Thus, there was no existing Employment Claim related to the Aridi Charge at the time of Bellard's oral report to Ferguson.

> Step 4: Since there was no existing Employment Claim at the time of Bellard's oral report, even if Ferguson had communicated Bellard's report to Federal in writing, that written communication to Federal could not have been notice of an Employment Claim.

Step 5: Therefore, Federal's coverage obligations under the Policy would not have been triggered even if Ferguson had sent a written communication to Federal conveying the information provided by Bellard.

Step 6: Thus, Ferguson's failure to communicate Bellard's oral report to Federal did not cause Flat Rock to lose out on coverage that otherwise would have been available to Flat Rock under the Policy.

(Def.'s Supp. Br., ECF No. 48, PageID.2387-2395.)

This is a serious argument. But it appears to be in tension with Federal's own application of the Policy's notice provisions. Indeed, the denial letter issued by Federal can reasonably be read to imply that that written notice of the Aridi Charge *could have been* sufficient to trigger its coverage obligations even if the notice had been provided before an administrative agency issued a notice or order commencing proceedings related to the charge – *i.e.*, before an Employment Claim technically arose under the Policy. In the denial letter, Federal recognized that the Employment Claim related to the Aridi Charge was "made on July 2, 2019 upon the Notice of Charge of Discrimination." (Coverage Denial, ECF No. 38-9, PageID.1716.) Federal then addressed whether Bellard's emails "from May and June 2019" constituted sufficient notice of that claim under the Policy. (*Id.*) Federal said that those emails collectively did not constitute sufficient notice because they did not contain "information sufficient to satisfy" the Required Written Notice provision of the Policy. But Federal did *not* say that the emails were insufficient because they were sent before the Employment Claim was first made. And that omission could

20

reasonably be regarded as significant because the general rule under Michigan law is that "once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *Haddock v. State Farm Fire & Cas. Co.*, 638 F. Supp. 3d 748, 762, n.7 (E.D. Mich. 2022) (quoting *South Macomb Disposal Auth. v. American Ins. Co.*, 572 N.W.2d 686, 712-713 (Mich. Ct. App. 1997)).   As a sophisticated insurance company, Federal was presumably well aware of this general rule and could reasonably be expected to have drafted its denial letter with the rule in mind.   Under these circumstances, it would be reasonable to infer from the denial letter that Federal would have accepted written notice from Flat Rock even if it had been provided before the Employment Claim formally arose.

Moreover, Ferguson seems to acknowledge in his affidavit that he could have provided what he calls "Records Only" notice to Federal even before the administrative proceedings relating to the Aridi Charge formally began. (Ferguson Aff. at ¶ 12, ECF No. 38-2, PageID.993.)  It is not clear to the Court that such notice would have been insufficient as a matter of law to trigger Federal's coverage obligations under the Policy.

Finally, Curto, as Assured's designated representative, never suggested during her deposition that notice by Assured to Federal of Bellard's oral report would have been insufficient under the Policy because no Employment Claim was yet in

21

existence. (*See* Curto Dep., ECF No. 41-14.)   Instead, as described above, she seemed to implicitly acknowledge that Assured would have and could have given effective notice to Federal in May or June of 2019 – before the Employment Claim arose – if only Bellard had provided sufficient information about the Aridi Charge.

For all of these reasons, the Court cannot conclude, as a matter of law, that Assured's failure to give Federal written notice of Bellard's oral report could not have injured Flat Rock because Bellard made her report before the Employment Claim arose.

**3**

Assured offers one additional argument as to why Flat Rock could not have suffered any injury as a result of its (Assured's) failure to inform Federal of Bellard's oral report.   Assured insists that that failure could not have harmed Flat Rock because, as a matter of law, written notice from Assured to Federal could not satisfy the Policy's notice provision.   Assured highlights the Policy provision requiring the "Insured" – Flat Rock here – to provide the Required Written Notice. (*See* Policy at § IV(D), ECF No. 38-2, PageID.1056.)   Assured notes that it is obviously not Flat Rock, and it further insists that it cannot be considered Flat Rock's agent for the notice provisions of the Policy. (*See* Def.'s Supp. Br., ECF No. 48, PageID.2398.) Assured concludes that since it is neither Flat Rock nor Flat Rock's representative for purposes of notice under the Policy, as a matter of law, any written notice that it

22

provided to Federal could not have been effective. (*See id.*)  The Court cannot accept Assured's argument because Assured has failed to persuade the Court that it could not have been Flat Rock's agent for purposes of notice under the Policy.

Assured offers two arguments as to why it could not have been Flat Rock's agent for notice purposes.  Both fall short.  First, Assured invokes the general rule under Michigan law that an independent insurance agent like Assured is "a limited agent for the purpose of procuring the insurance coverage requested," and for no other purpose. (*See id.* at PageID.2396.)  But the record in this case contains evidence that Assured and Flat Rock had an implied-in-fact contract under which Assured agreed to assist Flat Rock in providing notice to Flat Rock's insurance carriers.  So, even if an independent insurance agent is generally an agent of an insured for the sole purpose of procuring coverage, a jury could reasonably find here that Assured and Flat Rock agreed that Assured's agency would expand beyond that task.

Second, Assured argues that the terms of the Policy preclude a finding that Assured is Flat Rock's agent for purposes of notice.  Assured highlights the provision of the Policy stating that notice to Assured (as a licensed agent of Federal in Michigan) is notice to Federal.  Assured says that this provision "appoints" Assured as *Federal's* agent for purposes of reporting claims under the Policy, and

Assured insists that it cannot possibly be an agent of Flat Rock for that same purpose. (*See id.* at PageID.2396-2398.)

This argument admittedly has some logical force, but Assured has not persuaded the Court that, as a matter of law, it could not have been an agent for both Flat Rock and Federal with respect to notice under the Policy. A decision on which Assured relies, *Remar v. Trumbley*, No. 242779, 2003 WL 21278905 (Mich. Ct. App. June 3, 2003), seems to suggest that Assured *could* have been an agent for both parties. *Remar* involved an insured named Catherine Trumbley who had utilized the services of an independent insurance agent, the Madigan-Pingatore Agency, to procure a liability policy from Citizens Insurance Company of America. *See id.* at *1. The policy in that case, like the Policy here, provided that if the insured gave notice of a claim to an "authorized agent" of Citizens, that would be deemed notice to Citizens. *Id.* The "first issue" in the case was "whether Madigan-Pingatore was the 'authorized agent' of Citizens for purposes of receiving notice of a claim and notice of a lawsuit." *Id.* The Michigan Court of Appeals held that there was "a genuine issue of material fact as to whether Madigan-Pingatore was an agent of [Trumbley], Citizens, *or possibly a dual agent*." *Id.* at *2 (emphasis added). That holding suggests that even where an insurance policy designates an independent insurance agent as an agent of the carrier for the notice provisions of a policy, the independent agent may also be an agent of the insured for that same purpose. As in

*Remar*, on this record, there is a material dispute of fact as to whether Assured was an agent for both Flat Rock and Federal with respect to notice under the Policy. *See also Estate of Morse ex rel. Morse v. Titan Ins. Co.*, No. 309837, 2014 WL 3971438, at *5 (Mich. Ct. App. Aug. 14, 2014) (explaining that "whether an agent was acting as an agent for both the insured and the insurer has occasionally been deemed a question of fact.").

Furthermore, Assured has not yet persuaded the Court that it is impossible to reconcile its (Assured's) role as Federal's agent for purposes of notice with the notion that it could also be Flat Rock's agent for that same purpose. Simply put, it seems that two things could be true at the same time: (1) Assured could accept written notice from Flat Rock under the Policy on behalf of Federal and (2) Assured could alternatively act on behalf of Flat Rock and provide written notice of claim to Federal after Flat Rock provided oral notice of a claim to Assured. In short, it is not necessarily illogical to conclude that there could be two routes to effective notice under the Policy: route one is written notice from Flat Rock to Assured and route two is written notice from Assured, acting on behalf of Flat Rock, directly to Federal.[4]

---

[4] While the Policy does provide that notice must be given by the Insured, the Court sees no reason why such notice could not come from someone designated to act on behalf of the Insured. For instance, it would seem obvious that an attorney for an Insured could provide effective written notice on behalf of the Insured under the

**4**

Assured's final argument is that the Court must grant its motion for summary judgment because the Court granted Federal's motion for summary judgment. (*See* Def.'s Supp. Br., ECF No. 48, PageID.2400-2401.)  The Court disagrees.  Federal's motion presented a different and narrower issue: whether Bellard's oral report to Ferguson constituted sufficient notice to Federal.  It did not.  But the questions here include (1) whether, after Ferguson received Bellard's oral report, Assured was obligated to reduce that report to writing and submit it to Federal as written notice of the Aridi Charge and (2) whether Assured's failure to do so injured Flat Rock. The Court's decision on Federal's motion does not compel an answer either way on these questions.

**C**

For all of the reasons explained above, Assured is not entitled to summary judgment on Flat Rock's breach of contract claim.

**IV**

In the alternative to its breach of contract claim, Flat Rock also brought a negligence claim in which it alleges that Assured negligently breached its duty to report the Aridi Charge to Federal.  (*See* Compl., ECF No. 1-1.)  "Under Michigan

---

Policy.  It seems that a duly designated agent other than an attorney should similarly be able to provide notice on the Insured's behalf.

law, there are four elements of a claim for negligence: duty, breach, causation, and damages." *Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*, 727 F.3d 633, 642 (6th Cir. 2013).

Flat Rock's negligence claim fails as a matter of law because Flat Rock cannot satisfy the duty element of its claim. As Flat Rock's counsel properly acknowledged during the hearing before the Court on Assured's motion, where a plaintiff and a defendant are parties to a contract, the plaintiff may maintain a negligence action against the defendant only if the plaintiff alleges that the defendant breached a duty independent of duties owed by the defendant under the parties' contract.[5] (*See* 11/04/2024 Hr'g Tr., ECF No. 47, PageID.2355-2356.) And during the hearing, Flat Rock's counsel could not identify any duty of Assured to report the Aridi Charge that was independent of the duties that Assured allegedly owed under the parties' implied-in-fact contract. (*See id.*) Therefore, Flat Rock may not proceed with its negligence claim.

For these reasons, Assured is entitled to summary judgment on Flat Rock's negligence claim.

---

[5] *See Hart v. Ludwig*, 79 N.W.2d 895, 897 (Mich. 1956) (explaining that for there to be a viable negligence claim, "[t]here must be some breach of duty distinct from breach of contract.").

**V**

For all of the reasons explained above, Assured's motion for summary judgment (ECF No. 38) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** with respect to Flat Rock's negligence claim.  That claim is **DISMISSED**.  The motion is **DENIED** in all other respects.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 29, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 29, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126